**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| U.S. ETHERNET INNOVATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Samsung Electronics Co., LTD.; Samsung Electronics America, Inc.; Samsung Telecommunications America, Inc.; Samsung Austin Semiconductor, LLC; and Oki Data Americas, Inc.<br><br>Defendants. | Civil Action No. 6:12-cv-398<br><br>JURY TRIAL DEMANDED |

**DEFENDANT OKI DATA AMERICAS, INC.'S MOTION
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................................ 1

        A.  The NDCA is Familiar with the Patents at Issue ................................................... 1

        B.  Most of the Key Witnesses and the Majority of Relevant Documents Concerning
            the Patents-at-Issue Are Located in the NDCA ..................................................... 3

        C.  Prior Art Witnesses and Materials Are Located in the Northern District of
            California ............................................................................................................... 3

        D.  Key Witnesses and Documents Are Not Located in the Eastern District of Texas ....... 4

III.    LEGAL STANDARD ....................................................................................................... 4

IV.     ARGUMENT ..................................................................................................................... 7

        A.  Plaintiff Could Have Brought This Action in the NDCA ..................................... 7

        B.  The Private Interest Factors Clearly Weigh in Favor of Transfer to the NDCA ........... 7

        C.  The Public Interest Factors Clearly Weigh in Favor of Transfer to the NDCA .......... 11

V.      CONCLUSION ................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page**

*3Com Corporation v. D-Link Systems, Inc., et al.*,
  3:03-CV-02177 VRW (N.D. Cal) ................................................................................... 2, 3, 8

*Balthasar Online, Inc. v. Network Solutions, LLC*,
  654 F.Supp.2d 546 (E.D. Tex. 2009) .................................................................................. 5

*Brackett v. Hilton Hotels Corp.*,
  619 F. Supp. 2d 810 (N.D. Cal. 2008) ................................................................................. 9

*Fifth Generation Computer Corp. v. Int'l Bus. Machs. Corp.*,
  No. 9:08-CV-205, 2009 U.S. Dist. LEXIS 12502 (E.D. Tex. Feb. 17, 2009) ..................... 8

*Genentech Inc. v. Biogen Idec Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................................................. 6, 8, 9, 10

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 67 S. Ct. 839 (1947) ..................................................................................... 6

*In re: Hoffman-La Roche*,
  587 F.3d 1333 (Fed. Cir. 2009) ........................................................................... 6, 8, 9, 14

*In re Horseshoe*,
  337 F.3d 429 (5th Cir. 2003) ............................................................................................. 11

*In re Air Crash Disaster Near New Orleans, La.*,
  821 F.2d 1147 (5th Cir. 1987) ............................................................................................. 5

*In re Microsoft Corp.*,
  Misc. No. 944, 2011 (Fed. Cir. January 5, 2011) ................................................................ 6

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) ..................................................................................... 6, 10

*In re T.S. Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ........................................................................... 6, 8, 13, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................... 5, 6

*In re Volkswagen*,
  566 F.3d 1349 (Fed. Cir. 2009) ......................................................................................... 12

*Invitrogen Corp. v. General Elec. Co.*,
   No. 6:08-cv-112, 2009 U.S. Dist. LEXIS 9127 (E.D. Tex. Feb. 9, 2009) ...............................11

*J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*,
   No. 6:08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) (Love, M .J.) .........................11

*Liaw Su Teng v. Skaarup Shipping Corp.*,
   743 F.2d 1140 (5th Cir. 1984) ................................................................................................ 5

*Odom v. Microsoft Corp.*,
   596 F. Supp. 2d 995 (E.D. Tex. 2009)....................................................................................14

*Regents of the Univ. of California v. Eli Lilly and Co.*,
   119 F.3d 1559 (Fed. Cir. 1997)...............................................................................................12

*Rich v. S. Gulf Operators*,
   879 F. Supp. 49 (E.D. Tex. 1995)...........................................................................................11

*U.S. Ethernet Innovations, LLC v. Acer, Inc. et al.*,
   6:09-cv-448-LED (E.D. Texas, transferred to N.D. Cal.; U.S. Ethernet Innovations,
   LLC v. Acer, Inc. et al., 3:10-cv-3724-MMC) ........................................................................2

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ............................................................................14

*Zoltar Satellite Sys. Inc.*,
   402 F. Supp. 2d 731 (E.D. Tex. 2005)............................................................................3, 4, 20

**Statutes**

28 U.S.C. § 1391(b) and (c)...........................................................................................................7

28 U.S.C. § 1400(b) .......................................................................................................................7

28 U.S.C. § 1404(a) ...........................................................................................................1, 5, 7, 14

35 U.S.C. § 287..............................................................................................................................3

Defendant Oki Data Americas, Inc. (hereinafter "Oki Data") moves pursuant to 28 U.S.C. § 1404(a) to transfer this action from the United States District Court for the Eastern District of Texas to the United States District Court for the Northern District of California (hereinafter "NDCA").[1]

## I. INTRODUCTION

This case does not belong in Texas:

- The NDCA has already construed the terms of two of the four patents-in-suit and has tried those patents to a verdict. Hence, that court is already familiar with these patents, their file histories, much of the prior art, and the technology that is common to all four patents-at-issue.

- Defendant Oki Data has no corporate offices or documents in this District.

- A significant number of key witnesses, including all five named inventors of the patents-in-suit and the prosecuting attorney of the patents-in-suit reside in the NDCA. Further, multiple additional witnesses are likely to be found in that venue given its ties to the parties in the related actions, their suppliers, and the sources of prior art.

- In addition, Plaintiff is currently asserting three of the four patents-in-suit in the NDCA. The Court has already issued two Markman Orders in that case.

Indeed, the only relevant connection with this forum is that Plaintiff purports to be a Tyler, Texas business. But there is no evidence of anything more than a shell in this forum. In light of the foregoing, and for the reasons set forth herein, Oki Data respectfully requests the Court transfer this action to the NDCA, or in the alternative, to the District of New Jersey.

## II. FACTUAL BACKGROUND

### A.  The NDCA Is Familiar with the Patents at Issue.

---

[1]  In the alternative, Oki Data moves for the case to be transferred to the District of New Jersey where Oki Data has its principal place of business, approximately 300 employees, most of its documents, and its management team. (Vaughn Decl. ¶¶ 2-3). Oki Data is subject to personal jurisdiction in New Jersey. Further, the public and private interests weigh in favor of transfer to New Jersey—the majority of Oki Data's employee witnesses are in New Jersey and the majority of Oki Data's corporate, product, and sales documents are in New Jersey. (*Id*. ¶¶ 2-3). The local interests also weighs heavily in the transfer decision because Oki Data is resident of New Jersey and employs approximately 300 people in New Jersey (*Id*. Decl. ¶¶ 2-3) and because Plaintiff's New York office and at least Mr. Rosenberg are approximately fifteen miles from the District Court in Newark, New Jersey. (Hoeffner Decl. ¶ 5).

1

In a case spanning from 2003 through 2008, Plaintiff's predecessor in interest tried to verdict claims that computer components known as network adapters or network interface controllers (NIC's) made, used, or sold by D-Link and Realtek infringed United States Patents Nos. 5,307,459, 5,434,872, and 5,732,094 (the '459, '872, and '094 Patents). (Hoeffner Decl. ¶ 3). The 790 docket entries in *3Com Corp. v. D-Link Systems, Inc., et al.*, 3:03-CV-02177 VRW (N.D. Cal). ("*Realtek*"), include rulings on claim construction and multiple summary judgment motions. (Hoeffner Decl. ¶ 4). They also reflect extensive motion practice, as well as jury instructions, motions *in limine*, post-trial motions, and two weeks of trial. (*Id*). Thus, the NDCA court, has already invested substantial time and resources becoming familiar with the technology, legal issues, and subject matter of this case.

A subsequent case asserting the '459, '872, and '094 patents along with United States Patent No. 5,299,313 was filed in the Eastern District of Texas[2] in 2009 against a new group of defendants having no ties to this District. Defendants filed a joint motion to change venue, which was granted on July 13, 2010. (Hoeffner Decl. ¶ 7). That Order, found that the judicial economy public factor weighed in favor of transfer and noted the importance of uniformity of claim construction rulings (*Id*., pp. 12-14). The Court also found that the private interest factors weighed in favor of transfer as well. (*Id*., pp. 17-18).

After transfer[3] to the NDCA and extensive briefing by the parties, a first Markman Hearing was held on October 21, 2011 and a First Claim Construction Order was issued on January 31, 2012 (Dkt # 586). (Hoeffner Decl. ¶ 6). The parties filed additional briefs and a second Markman Hearing was held on May 3, 2011. A Second Claim Construction Order was issued on August 29, 2012 (Dkt # 634). (*Id*.) The case is scheduled for a case management

---

[2] U.S. Ethernet Innovations, LLC v. Acer, Inc. et al., 6:09-cv-448-LED.

[3] U.S. Ethernet Innovations, LLC v. Acer, Inc. et al., 3:10-cv-3724-MMC.

conference on November 9, 2012. (*Id.*)

### B. Most of the Key Witnesses and the Majority of Relevant Documents Concerning the Patents-at-Issue Are Located in the NDCA

Key witnesses and documents concerning the asserted patents are also in the NDCA. All five of the named inventors of the patents-at-issue are resident in the NDCA (Hoeffner Decl. ¶ 9). Similarly, the primary prosecuting attorney to all four patents, Mark A. Haynes, resides in the NDCA, as does attorney Kent R. Richardson, who assisted in the prosecution of at least the '094 Patent. Whether Plaintiff and its predecessor 3Com complied with the marking requirements of 35 U.S.C. § 287 will also be an issue in the litigation. Annette Davis, a former 3Com engineer who testified during the *Realtek* case concerning 3Com's patent marking practices, resides in the NDCA. (Hoeffner Decl. ¶¶ 10-12). Scott Mitchell, another 3Com engineer having personal knowledge on the marking issue, also resides in the NDCA. (*Id.*).

### C. Prior Art Witnesses and Materials Are Located in the Northern District of California

Key witnesses relevant to the prior art asserted against the patents-in-suit in the *Realtek* case also currently reside in the NDCA. For example, Farzin Firoozmand was an inventor of multiple patents cited during the prosecution of the patents-in-suit, including one reference that the examiner found anticipated several independent claims of the '872 Patent. Mr. Firoozmand also provided testimony during the *Realtek* litigation concerning the conception and development of a prior art high-speed network interface device by Advanced Micro Devices, Inc. (AMD), as did another AMD engineer, Gururaj Singh. Both Messrs Firoozmand and Singh reside in the NDCA. (Hoeffner Decl. ¶¶ 13-14). AMD's corporate headquarters—presumably the depository for the relevant documents related to AMD's prior art network interface device—is located in the NDCA. (Hoeffner Decl. ¶ 15).

### D. Key Witnesses and Documents Are Not Located in the Eastern District.

Defendant Oki Data is aware of *no* relevant witnesses located in the Eastern District. (Hoeffner Decl. ¶¶ 8-15). Plaintiff's sole East Texas connection appears to be an office established in Tyler about two weeks before filing the 2009 action that was transferred to the NDCA. According to USEI's Corporate Disclosure Statement, USEI's parent company is Parallel Technology, LLC based in Alpharetta, Georgia; according to its website, USEI's management, David Kennedy and Laurence Rosenberg, are located in Georgia and New York, respectively. (*Id*. ¶ 5). There is no evidence of anything more than a shell in this forum.

Furthermore, Defendant Oki Data has no presence in this judicial district. Oki Data is incorporated in Delaware and its principal place of business is in New Jersey. It has no corporate offices in this District. (Vaughn Decl. ¶ 2). On the other hand, Oki Data has full-time employees throughout California and has employees in Newark, California and Concord, California—both in the NDCA. (Vaughn Decl. ¶ 4). In addition, Oki Data's products are imported into Long Beach, California from which Oki Data's contractor, Weber Logistics—located in La Mirada, California, ships products to distributors throughout the United States. At least one of those distributors is in Fremont, CA, which is in the NDCA. (Vaughn Decl. ¶ 4).

Co-defendants Samsung Electronics Co., LTD., Samsung Electronics America, Inc., Samsung Telecommunications America, Inc., and Samsung Austin Semiconductor, LLC (hereinafter "the Samsung entities") are not located in this District. (Samsung's Answer, Defenses, and Counterclaims to Plaintiff USEI's Complaint for Patent Infringement at ¶ 5).

### III. LEGAL STANDARD

Pursuant to the venue transfer statute, 28 U.S.C. § 1404(a), once the district court decides a case might have been brought in the destination venue, it must then turn to whether "the convenience of the parties and witnesses, in the interest of justice" requires

transfer. *Volkswagen II*, 545 F.3d at 312. While the courts generally prefer that all defendants could have been sued in the transferee district, it is not an absolute requirement. *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *rev'd on other grounds, In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1163 n.25 (5th Cir. 1987). Indeed, the Eastern District of Texas has previously severed and transferred a first group of defendants to the NDCA and maintained the Eastern District action for a second group of defendants because several of the defendants could not have been sued in the transferee district. *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F.Supp.2d 546, 552-53 (E.D. Tex. 2009). Under Fifth Circuit law, a transfer is to be ordered where the transferee forum is "clearly more convenient" than the venue chosen by Plaintiff. *TS Tech*, 551 F.3d at 1319. This determination of "convenience" turns on the assessment of four "public interest" and four "private interest" factors. *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839 (1947)).

     The Federal Circuit recently granted a writ of mandamus in *In re Microsoft Corp.*, Misc. No. 944, 2011 (Fed. Cir. January 5, 2011). Plaintiff's Tyler, Texas office had no employees and all operations were handled by employees in the United Kingdom. Microsoft, on the other hand, maintains corporate offices in the Western District of Washington, where a substantial number of its employees resided and operations were conducted. In granting the writ, the Federal Circuit held the determining factor was that "a significant number of witnesses and parties were actually located within the transferee venue and could be deposed and testify without significant travel of expense, while no witness or party was located within the plaintiff's chosen forum." *Id.* at *4.

     In *In re Nintendo Co.*, the Federal Circuit likewise granted a writ of mandamus and

5

ordered the District Court to transfer a patent infringement action in "a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the Plaintiff . . . ." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). None of the identified key witnesses lived in East Texas and no relevant documentation or other evidence was located there. *Id.* at 1199-1200; *Genentech Inc. v. Biogen Idec Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009); *In re Hoffmann-La Roche*, 587 F.3d 1333 (Fed. Cir. 2009).

Here, as in *Microsoft* and *Nintendo*, there are no identifiable ties to the Eastern District of Texas other than connections created in anticipation of litigation. As set forth below, weighing these factors clearly demonstrates the NDCA is more convenient and a transfer therefore should be ordered.

**IV. ARGUMENT**

    **A.    Plaintiff Could Have Brought This Action in the NDCA.**

"The threshold determination to be made under Section 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought." *Fifth Generation Computer Corp. v. Int'l Bus. Machs. Corp.*, No. 9:08-CV-205, 2009 U.S. Dist. LEXIS 12502, at *6 (E.D. Tex. Feb. 17, 2009). There is no dispute that the case against Oki Data could have been filed in the NDCA. Defendant Oki Data has employees and sell products in the NDCA and is also subject to personal jurisdiction in the NDCA. *See e.g.*, 28 U.S.C. §§ 1391(b) and (c), and § 1400(b). (Vaughn Decl. ¶ 4).[4] Because personal jurisdiction exists in the NDCA over Oki Data, the threshold determination is met. Thus, the transfer analysis turns on

---

[4] The Samsung Defendants could also have been sued in the Northern District of California as evidenced by the pleadings in numerous cases in that District in which each Samsung Defendant has been a party. See, *e.g.*, on Pacer: Samsung Electronics Co., LTD. (11-cv-2079); Samsung Electronics America, Inc. (11-cv-189); Samsung Telecommunications America, Inc. (10-cv-881, see Dkt# 17: motion to transfer all four Samsung defendants to Northern District of California); and Samsung Austin Semiconductor, LLC (08-cv986). The Samsung Defendants have not opposed transfer and have joined the pending motions to transfer (Dkt# 37).

weighing the private and public interest factors.

### B. The Private Interest Factors Clearly Weigh in Favor of Transfer.

The private interest factors heavily favor transferring this case to the Northern District.

<u>The Relative Ease of Access to Sources of Proof</u>

The first private interest factor to be considered is "the relative ease of access to sources of proof," meaning documentary and physical evidence. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the Defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345. The location of documentary evidence in this case strongly weighs in favor of transfer to the NDCA. *See e.g.*, *TS Tech*, 551 F.3d at 1320-21; *Genentech*, 566 F.3d at 1345-46.

Key third party witnesses – including all of the named inventors, prosecution counsel, and third party prior art inventors – have their documents in the proposed transferee forum. (Hoeffner Decl. ¶¶ 9-14). In contrast, documentary proof or other evidence relating to Plaintiff's claims is not known to be in the Eastern District of Texas. (Hoeffner Decl. ¶ 5, 16). That Plaintiff opened a Tyler office or transported documents to this venue in anticipation of asserting the patents-in-suit does not affect the venue determination. *Fifth Generation Comp. Corp.*, 2009 U.S. Dist. LEXIS 12502, at *11-12 ("the fact that IBM maintains an office in the Southern District of Texas related to its Blue Gene-based on-line service, when...there is no showing that this office is likely to be the situs of documents relevant to this infringement action, does not establish a connection to the Eastern District of Texas"); *Hoffmann-LaRoche*, 587 F.3d at 1336-37.

Accordingly, the ease-of-access-to-proof factor in this case weighs heavily in favor of transfer because a substantial majority of known sources of relevant documents are located in

7

the NDCA, while none are known to exist in the Eastern District of Texas.

### The Compulsory Process to Secure the Attendance of Witnesses

The second factor concerns the court's ability to compel non-party witnesses to attend trial. This factor favors transfer when more non-party witnesses reside within the proposed venue than in the Plaintiff's chosen venue and it most favors transfer when the proposed transferee forum has absolute subpoena power over third-party witnesses. *See Id.* at 1336-38.

Because there are a significant number of witnesses that are within the subpoena power of the NDCA, this factor weighs heavily in favor of transfer, under the Federal Circuit's analysis in *Genetech*.

> As noted above, there is a substantial number of witnesses within the subpoena power of the NDCA and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue with usable subpoena power here **weighs in favor of transfer, and not only slightly**.

*Genentech*, 566 F.3d at 1345 (emphasis added); *see also Hoffman*, 587 F.3d at 1337-38 (transferee venue's subpoena power over a substantial number of witnesses favors transfer).

Here, Defendant Oki Data knows of no relevant witnesses within the absolute subpoena power of this Court. (Hoeffner Decl. ¶¶ 5, 8-14). Oki Data has no corporate offices in the Eastern District of Texas. (Vaughn Decl. ¶ 2). Indeed, even the Samsung entities located in Austin and Richardson are not under the absolute subpoena power of this District and cannot be compelled by this Court to give deposition testimony as they are located more than 100 miles from the court. (Hoeffner Decl. ¶ 8 and Samsung's Answer at ¶ 5).

In contrast, there are likely a significant number of relevant third-party witnesses within the absolute subpoena power of the NDCA that could testify on the likely accused technology, the prior art, as well as the development of the technology claimed in the patents-

in-suit.[5] (Hoeffner Decl. ¶¶ 9-14). For example, the NDCA has absolute subpoena power over all of the inventors of the patents-in-suit, the primary prosecuting attorney, former 3Com engineers knowledgeable concerning 3Com's marking practices, and important AMD prior art witnesses. (Hoeffner Decl. ¶¶ 11-14). If this case remains in the Eastern District of Texas, Defendants will be unable to compel live trial testimony from any of these third-party witnesses. Further complicating Defendants' ability to engage in fruitful discovery and prepare a defense to Plaintiff's accusations, this Court declined to adopt language in the Discovery Order that would have allowed Defendants to use discovery from the cases in the NDCA in the Eastern District of Texas.[6] It is highly probable that extremely important third party witnesses such as the inventors of the patents and patent prosecution counsel would be available for a deposition in the NDCA and then be unavailable in the Eastern District of Texas. It is inconceivable that consistent claim constructions would result when one court has so much more pertinent information than the other. Thus, the availability of compulsory process in California strongly favors transfer.

<u>The Cost of Attendance for and Convenience of Willing Witnesses</u>

The convenience of and cost of attendance to witnesses is an important factor in the transfer analysis. *Genentech*, 566 F.3d at 1343. The NDCA is clearly a more convenient forum for the vast majority of the key witnesses due to its proximity to their residences. As explained above, many of these witnesses, including several former employees, prior art

---

[5] California district courts also have the power to subpoena witnesses throughout the state pursuant to Rule 45(b)(2)(C), which provides that a subpoena may be served anywhere within the state of the issuing court if a state statute allows statewide service. Section 1989 of the California Code of Civil Procedure authorizes such service. *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008).

[6] The section proposed by Defendants and rejected by the Court reads: "E. Use of Discovery from California Cases. Notwithstanding any of the discovery limitations set forth above, any discovery taken in case numbers 5:10-cv-03481, 3:10-cv-03724, and/or 5:10-cv-05254 in the United States District Court for the Northern District of California shall be treated as if it were taken in this case and may be used by any party in this case for any lawful purpose."

witnesses, inventors and prosecuting attorneys are located in the NDCA, and most of the rest are located elsewhere in California. (Hoeffner Decl. ¶¶ 5, 8-14). If this case proceeds in the Eastern District of Texas rather than the NDCA, these key witnesses will be substantially inconvenienced by having to travel over 1,200 miles to attend trial in this District. (Hoeffner Decl. ¶¶ 5, 8-14). *See, e.g.*, *Nintendo*, 2009 U.S. App. LEXIS 27647, at *9 (finding this factor clearly favors transfer because no witnesses live in Texas and key domestic witnesses "would have to travel an additional 1,756 miles or 7 hours by plane to Texas as compared with Washington state...."). For any non-U.S. witnesses, the availability of direct air connections to San Francisco makes a material difference in the difficulty of the trip required to attend trial in this matter.[7]

Other Practical Problems That Make a Trial Easy, Expeditious, and Inexpensive

No other practical problems favor this District. *In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003) (factor is applicable "in rare and special circumstances" and only if "established by clear and convincing evidence."). This case is in its preliminary stages. Because the Court has not yet invested significant resources in the merits of the case, transfer should not pose any significant burden or result in delay. *Rich v. S. Gulf Op.*, 879 F. Supp. 49, 51 (E.D. Tex. 1995).

### C. The Public Interest Factors Clearly Weigh in Favor of Transfer to the NDCA.

Just as the private interest factors weigh in favor of transfer, so too do the public interest factors. Here, judicial economy and local interest favor transfer.[8]

---

[7] Where there are direct flights to Dallas, the two-plus hour drive to Tyler is an additional burden. Where there are no direct flights, the additional flight time from a U.S. point of entry to Dallas poses still further difficulties.

[8] The remaining factors (court congestions, conflicts of laws, and familiarity with governing laws) are neutral, and thus, will not be addressed.

Judicial Economy

Judicial economy is of paramount consideration when determining whether a transfer is in the interest of justice. "When a Plaintiff brings similar suit in two different districts, the court must consider the extent to which transfer may increase judicial economy and decrease the risk of inconsistent adjudication." *Invitrogen Corp. v. General Elec. Co.*, No. 6:08-cv-112, 2009 U.S. Dist. LEXIS 9127, at *12 (E.D. Tex. Feb. 9, 2009). "[T]ransfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar Defendants with the same or similar products." *Id.* (quoting *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 6:08-cv-11, 2008 U.S. Dist. LEXIS 103609, at *5 (E.D. Tex. Dec. 23, 2008)); *Invitrogen*, 2009 U.S. Dist. LEXIS 9127, at *14 (judicial economy favored transfer because of overlap of earlier litigated issues in transferee venue). As the Federal Circuit has noted,

> In a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues.

*Regents of the Univ. of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997); *see also In re Volkswagen*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("[M]ultiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.").

The Court in the NDCA has already invested substantial time and judicial resources to learn and understand the underlying technology, the patents-in-suit, and some of the legal issues particular to this case. The NDCA litigation[9] spanned a period of five years and 790 docket entries. (Hoeffner Decl. ¶ 4). Significantly, during the earlier litigation of two of the

---

[9] *3Com Corporation v. D-Link Systems, Inc.*, et al. 3:03-CV-02177 VRW (N.D. Cal).

four patents-in-suit at issue here, the Court resolved disputes concerning infringement contentions[10]; evaluated claim construction briefing[11]; conducted a Markman hearing[12]; issued a Markman order and jury instructions collectively construing twelve claim terms relevant to the patents-in-suit in the instant litigation[13]; conducted a trial in which he heard invalidity, infringement, and damages arguments; prepared fifty-three page jury instructions[14]; and considered motions for judgment as a matter of law[15] and post-trial motions.[16] (*Id.*).

Furthermore, the NDCA has performed substantial work on the case that was transferred to the NDCA on August 19, 2010 concerning three of the four patents-in-suit.[17] (Hoeffner Decl. ¶ 6). After extensive briefing by the parties, a first Markman Hearing was held on October 21, 2011 and a First Claim Construction Order was issued on January 31, 2012 (Dkt # 586) (*Id.*). The parties filed additional briefs and a second Markman Hearing was held on May 3, 2011. A Second Claim Construction Order was issued on August 29, 2012 (Dkt # 634) (*Id.*). The case had a case management conference on November 9, 2012.

As such, the NDCA is intimately familiar with this technology and these patents. This Court would have to duplicate much of the work already performed by the NDCA if it does not transfer this case. Accordingly, judicial economy considerations strongly favor transfer to the NDCA easily and expeditiously. *See Zoltar Satellite Sys. Inc.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005) (reasoning that judicial economy strongly favored transfer because the

---

[10] *Id.* at Doc No. 251.

[11] *Id.* at Doc. Nos. 69, 70, 303, 325, 327, 330, 333, 338, 340, 343, 676.

[12] *Id.* at Doc. No. 375.

[13] Id. at Doc. Nos. 320, 375.

[14] *Id.* at Doc. Nos. 680, 682.

[15] *Id.* at Doc. No. 681.

[16] *Id.* at Doc. Nos. 725, 726, 728, 730, 731, 732.

[17] U.S. Ethernet Innovations, LLC v. Acer, Inc. et al., 3:10-cv-3724-MMC

court's "investment of time and effort with these patents has been, and continues to be, substantial....A duplication of his efforts would be wasteful of judicial resources and detrimental to judicial economy.").

<u>The Local Interest in Having Localized Interests Decided at Home</u>

The NDCA has an obvious connection and substantial local interest in adjudicating this case, as it is the locale for "the vast majority of identified witnesses, evidence, and events leading to this case." *TS Tech*, 551 F.3d at 1321. The majority of the key witnesses and documentary evidence relating to the research, design, and development of the technology and prior art products are also in that district. (Hoeffner Decl. ¶ 9-14). Likewise, numerous suppliers of network interface controllers are based in the NDCA. Put simply, the activity which is at the center of this dispute largely took place in the NDCA and, as such, the Northern District has a strong local interest. (*Id*.). *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1003 (E.D. Tex. 2009) (because all of the events leading up to the infringement suit occurred in the transferee district, that district had a stronger local interest in the case).

In contrast, the Eastern District of Texas has minimal connections to this case. As explained above, the research or development of the identified accused products and the network interface controllers did not occur in the Eastern District. Moreover, this district has minimal or no ties to the parties or witnesses. Further, Plaintiff's managers are on the East Coast and thus its sole connection to the Eastern District of Texas is the locale of its place of incorporation and principal place of business, established on September 28, 2009, two weeks before Plaintiff began its seriatim assertion of these patents in the Eastern District of Texas. (Hoeffner Decl. ¶¶ 5, 16). This connection, however, is too convenient to be coincidental – indeed, it is presumably a tactic to attempt to manipulate venue.

13

The Supreme Court has frowned upon such tactics, explaining that 1404(a) "should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just." *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964). Here, Plaintiff's attempt to manufacture a more meaningful connection to the Eastern District of Texas by incorporating on the eve of litigation, while its managers remain on the East Coast, falls squarely within such prohibited activities. *See e.g., Hoffman-La Roche*, 2009 U.S. App. LEXIS 26244, at *12 (rejecting Plaintiff's attempt to create a connection to East Texas). "The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law and not from the deliberate conduct of a party favoring trial in an inconvenient forum." *Van Dusen*, 376 U.S. at 624.

Moreover, the fact that the accused products are sold in this District through secondary sources does not give the Eastern District of Texas a stronger interest in the case than other districts. The Federal Circuit has recognized that where the products are "sold throughout the United States, . . . the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue." *TS Tech*, 551 F.3d at 1321. Accordingly, to the extent the citizens of the Eastern District of Texas have any interest in this lawsuit, it cannot outweigh the substantial local interest of the NDCA.

## V. CONCLUSION

For all of the foregoing reasons, Defendant Oki Data Americas, Inc. respectfully requests this Court transfer this case to the Northern District of California.

Dated: November 21, 2012                Respectfully submitted,

          */s/ Michael C. Smith*
          Marc R. Labgold, Ph.D.
          Patrick J. Hoeffner
          NAGASHIMA & HASHIMOTO
          12007 Sunrise Valley Drive, Suite 110
          Reston, VA 20191
          Telephone: (703) 901-8860
          mlabgold@labgoldlaw.com

          Michael Charles Smith
          SIEBMAN BURG PHILLIPS & SMITH, LLP
          P O Box 1556
          Marshall, TX 75671-1556
          Telephone: (903) 938-8900
          Fax: (972) 767-4620
          michaelsmith@siebman.com

          *Attorneys for Oki Data Americas, Inc.*

**CERTIFICATE OF CONFERENCE**

Counsel for Defendant Oki Data Americas, Inc. has conferred with counsel for Plaintiff on November 16, 2012 and Plaintiff is opposed to the relief requested.

*/s/ Michael C. Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail this 21st day of November, 2012.

*/s/ Michael C. Smith*